IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CARL D. GORDON,** ) | Civil Action No. 7:13cv00249 |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | By: Norman K. Moon |
| **SHELBY COLLINS,** *et al.*, ) | United States District Judge |
| Defendants. ) | |

Carl D. Gordon, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate dental treatment, retaliated against him, and denied him equal protection. Defendant Dr. Collins moved to dismiss, defendant Dental Assistant Wright moved for summary judgment, and Gordon has responded to both motions, making this matter ripe for disposition. Upon review of the record, I conclude that Gordon has failed to state a claim against Dr. Collins and that Wright is entitled to summary judgment. Accordingly, I will grant the defendants' motions.

**I.**

During the time period relevant to this action (February 2010 to May 2012), Gordon was an inmate at Red Onion State Prison ("ROSP"), and defendant Dr. Collins was ROSP's dentist. Defendant Wright became the dental assistant at ROSP on August 25, 2010. Gordon was transferred to Wallens Ridge State Prison ("WRSP") on May 4, 2012, more than a year before he filed this action.

Gordon alleges that in February 2010, Dr. Collins informed him that Gordon's tooth #18 "had decay on it and needed to be filled," although there was no hole in it at the time. Gordon states that he was "subsequently placed on the list" for a tooth filling.

On August 2, 2010, Gordon filed an inmate request for information, inquiring as to his wait for a filling in tooth #18. Dr. Collins responded that Gordon was on the list and that when it was his turn, he would be seen. Defendant Wright began working as the dental assistant at ROSP shortly thereafter on August 25, 2010.

On November 28, 2010, April 19, 2011, October 5 and 19, 2011, and March 11, 2012, Gordon filed inmate requests for information, inquiring as to the status of his tooth filling. Dental Assistant Wright responded to all five requests, indicating that Gordon was still on the schedule to see the dentist.

On May 1, 2012, Gordon filed his first informal complaint concerning the delay in receiving a filling in tooth #18. Wright responded and indicated that Gordon was on the schedule. On May 4, 2012, Gordon was transferred to WRSP.

On May 28, 2012, after he was transferred out of ROSP, Gordon filed his first regular grievance about the delay. Gordon alleged, for the first time, that he now had "a large hole in tooth #18" and stated that it was "because the calculus/decay had not been removed and the tooth filled."

Gordon argues that while he was waiting for a filling in tooth #18, "numerous other prisoners" were scheduled to have fillings and they received those fillings "in a matter of weeks."[1] Gordon does not allege the severity of those other inmates' cavities or whether they experienced any pain or other consequential health effects. Gordon alleges that these other inmates were "purpose[ly] moved ahead of" Gordon "as retaliation" for Gordon having filed a

---

[1] In response to Wright's motion for summary judgment, Gordon provides three "affidavits" from other inmates, Damion Land, Adrian Bacon, and Michael Collins, in support of his allegation that other inmates were treated more quickly than he. However, two of these affidavits (Bacon's and Collins') are unsigned. Further, although Land signed his affidavit and indicates that his cavity was filled within "several weeks," he does not indicate the severity of his cavity or whether he suffered any pain or other consequential health effects.

lawsuit "involving" Dr. Collins.[2] Gordon claims that Dr. Collins and Wright "intentionally" tried to harm him. Gordon states that he fears that Dr. Collins and Wright might try to "seriously harm" him if they ever treat him again and argues that Dr. Collins has already "demonstrated his maliciousness" during an incident in "early 2010" when Dr. Collins allegedly passed sharp instruments to his dental assistant in front of Gordon's eyes.[3]

Gordon does not allege that he experienced any pain, discomfort, inability to chew food, bleeding, or any other interference with daily life during the time that he was waiting for a filling in tooth #18. Gordon argues however, that the delay "could have" led to "harm to [his] overall health," including periodontal disease, coronary atherosclerosis, a "myriad of heart problems," bacteremia (bacteria in the blood), or sepsis, "all of which are capable of causing death." He also claims that "substantial loss of tooth greatly weakens the tooth, even when [it is] filled and can lead to further dental or gum problems and loss of the entire tooth." I note that Gordon does not allege that he experienced any health issue as a result of waiting to receive the filling or that he ever filed an emergency grievance concerning the tooth.

With her motion for summary judgment, defendant Wright filed copies of "Master Inmate Movement Lists" for six different days. Each Master Inmate Movement List ("List")

---

[2] On March 2, 2010, Gordon filed a lawsuit in the Wise Count Circuit Court against the Commonwealth of Virginia. *Gordon v. Commonwealth*, No. CL10000129-00 (Va. Cir. Wise Cnty. 2010). That action did not name Dr. Collins as a defendant and, according to Gordon, did not allege that Dr. Collins had done anything wrong. The action was dismissed on November 3, 2010. I note that, in response to Wright's motion for summary judgment, Gordon states that on March 9, 2010, while the lawsuit was pending in state court, Dr. Collins completed fillings in two of Gordon's other teeth, but "did not have time" to complete the filling in tooth #18.

[3] In "early 2010," before defendant Wright began working at ROSP, during a dental examination, Gordon requested that Dr. Collins "stop passing the sharp instruments to his dental assistant . . . across [Gordon's] eyes." Gordon states that Dr. Collins allegedly "took offense" to Gordon's request and became "belligerent." Dr. Collins allegedly asked Gordon if he wanted Dr. Collins to continue the examination, and when Gordon indicated that he did, Dr. Collins said, "Well, shut up then." Gordon explained to Dr. Collins that due to an injury when he was a child, Gordon had anxiety when sharp objects were near his eyes. Dr. Collins allegedly said nothing but continued holding sharp instruments just above Gordon's eyes, causing Gordon anxiety.

3

represents a day on which Gordon was scheduled to see the dentist.[4] According to one of the Lists, Gordon was scheduled to see the dentist on October 21, 2010.[5] For unstated reasons, however, only five of the eleven scheduled inmates, none of whom were Gordon, were treated by the dentist that day. Wright explains that because ROSP is a maximum security prison and due to various security concerns, the number of inmates who can be seen by the dentist each day is limited. ROSP requires that inmates in segregation, like Gordon, have two correctional officers with them at all times while they are in the dental clinic, and often times, correctional staff assigned to the dental clinic are called away to attend to other duties. In addition, for security reasons, ROSP policy prohibits movement of an inmate to the dental clinic during fog. Consequently, the dental clinic is effectively shut down on foggy days. Further, the dental clinic is shut down twice each day for the correctional staff to perform an inmate count. This process can take from 20 to 90 minutes to complete.

According to another List, Gordon was next scheduled to see the dentist on November 19, 2010. However, on that day, the correctional officers were called away to other duties at 12:03 PM and, therefore, only two of the eight scheduled inmates, neither of whom was Gordon, were actually treated that day.

Gordon was next scheduled to see the dentist on March 17, 2011. However, on that day, the correctional officers were not called to the dental clinic until 11:00 AM, and the dentist had to leave at 12:00 PM. Therefore, only two of the eight scheduled inmates, neither of whom was Gordon, were actually treated that day.

---

[4] Wright does not allege that Gordon was scheduled to be seen by the dentist on any other day. I also note that in response to Wright's motion, Gordon makes an issue of the fact that several of the Lists indicate that Gordon needed to see the dentist for a tooth extraction rather than a filling. However, Gordon does not allege that he also needed an extraction and he has not demonstrated how this clerical error affected the scheduling of his filling.

[5] I note that, in response to Wright's motion for summary judgment, Gordon alleges that "as the dental assistant, it was Wright's job and hers alone to schedule prisoners to received fillings, and to put [inmates'] names on the lists given to the escort officers to have [the inmates] brought to the dental clinic."

4

Gordon was next scheduled to see the dentist on April 4, 2011. However, correctional officers were pulled away from the clinic to transport other inmates, and the dental clinic was shut down for the day after three of the eight scheduled inmates, none of whom were Gordon, were actually treated.

Finally, Gordon was next scheduled to see the dentist on May 16, 2012. However, Gordon had already been transferred from ROSP.

## II. Motion to Dismiss

Defendant Dr. Collins has moved to dismiss Gordon's complaint. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require

5

heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III. Motion for Summary Judgment

Defendant Wright has moved for summary judgment. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element

6

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

## IV. Medical Treatment

Gordon alleges that the defendants failed to provide him with adequate dental care by delaying a filling in his tooth #18. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff also must show that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Shabazz v. Prison Health Servs.*, No.

7

3:10cv190, 2011 U.S. Dist. LEXIS 88124, at *18-19, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz*, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 2489661, at *6; *see also*, *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), *abrogated on other grounds by Reece v. Groose*, 60 F.3d 487 (8th Cir. 1995); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Although Gordon filed seven requests for information and one informal complaint regarding the delay in his treatment, he only alleges that Dr. Collins responded to the first request for information. Gordon does not allege that Dr. Collins knew about the six other requests for information of the informal complaint. Gordon has not demonstrated that Dr. Collins was responsible for or had any involvement in scheduling dental appointments for any inmates.[6]

---

[6] In response to Dr. Collins' motion to dismiss, Gordon alleges that Dr. Collins documented Gordon's scheduled dental appointments in Gordon's dental chart. However, the one-page chart, which Gordon attaches to his

8

Gordon does not allege that when Dr. Collins responded to Gordon's request for information in August 2010, stating that Gordon was on the schedule, Dr. Collins knew that Gordon would not be treated in October or that Gordon's appointments would continue to be rescheduled and, thus, Gordon's treatment delayed. Gordon did not file any emergency grievance requests for treatment and did not file a regular grievance on this issue until after he was already transferred from ROSP. Further, Gordon does not allege that he suffered any pain or any other consequential health issue while waiting for the filling and, therefore, he has not demonstrated that he suffered a "substantial harm" as a result of the delay. Based on the allegations in Gordon's complaint, Gordon has failed to show that Dr. Collins knew of and disregarded an excessive risk to Gordon's health or safety. Therefore, Gordon has not demonstrated that Dr. Collins acted with deliberate indifference and, thus, he fails to state a constitutional claim. Accordingly, I will grant Dr. Collins' motion to dismiss this claim.[7]

There is no dispute that defendant Wright responded to six of Gordon's requests for information and his informal complaint, all of which inquired about the status of his filling. There is also no dispute that Gordon did not file an emergency request for treatment and there is no evidence that he actually suffered any pain or consequential health issues while waiting for the filling. In fact, Gordon did not even complain of an alleged hole in his tooth until after he was already transferred out of ROSP. Accordingly, Gordon has not demonstrated that Wright knew of and disregarded "an excessive risk" to Gordon's health or safety. In addition, the Lists show that Gordon was scheduled to see the dentist on six different dates over the course of two

---

response, does not support Gordon's allegation as there appears to be no notations by Dr. Collins after March 21, 2010.

[7] To the extent Gordon may be attempting to argue that Dr. Collins should have known that Gordon's filling was delayed because he was the dentist at ROSP, his claim still fails. To show deliberate indifference, a plaintiff must demonstrate that a prison official was both aware of the facts from which the inference could be drawn that a substantial risk of harm exists and he or she must actually draw the inference. *Johnson*, 145 F.3d at 167. Even if true, Gordon's argument alleges, at most, a claim of negligence, which is not actionable under § 1983.

9

years. While it may seem like a long time to wait for a filling, Gordon has not demonstrated that Wright intentionally delayed the procedure. Further, Gordon has not demonstrated that he suffered a "substantial harm" as a result of the delay. Therefore, Wright was not deliberately indifferent regarding Gordon's dental treatment and, thus, Wright is entitled to summary judgment as to this claim.[8]

### V. Retaliation

Gordon alleges that the defendants delayed his dental treatment in retaliation for him having filed a lawsuit "involving" Dr. Collins. It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts. *See Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting a claim of retaliation. *White v. White*, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism").

Gordon states that the lawsuit he filed in state court was not against Dr. Collins and did not complain about Dr. Collins' treatment of Gordon. Rather, it complained about VDOC policies and procedures. In addition, the lawsuit was filed in March 2010 and dismissed in November 2010, during which time Dr. Collins filled two of Gordon's other teeth. Defendant

---

[8] Gordon also argues that the defendants failed to follow a VDOC Operating Procedure, which states that inmates should be provided routine dental treatment according to the chronological date on their request form. *See* VDOC Operating Procedure 720.6 § VIII(C)(1). However, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Riccio v. City of Fairfax, Va.*, 907 F.2d 1459 (4th Cir. 1990) (violations of a procedure not required by the Constitution does not state Due Process claim); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (§ 1983 protects against constitutional violations not violations of prison rules). Accordingly, Gordon's allegations concerning policy violations fail to state a federal claim.

10

Wright was not even employed at ROSP at the time the lawsuit was filed, and the case was dismissed shortly after she began working at ROSP.  Gordon points to no facts, other than his bare assertions, that suggest that the defendants would have retaliated against him for having filed the civil action against the Commonwealth of Virginia in state court.  Accordingly, Gordon's conclusory allegations of retaliation fail to state a claim on which relief may be granted and, therefore, I will grant defendants' motions as to this claim.

### VI. Equal Protection

Gordon alleges that the defendants denied him equal protection by treating other inmates' dental issues more quickly than his.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).  To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.  *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  Because of the heightened deference due to administrators in the prison context, a prison administrator's conduct that impinges upon an inmate's constitutional rights is valid as long as it is reasonably related to legitimate penological interests and is not an exaggerated response to a particular concern, even where the constitutional right

11

allegedly infringed would otherwise warrant strict scrutiny review. *Morrison*, 239 F.3d at 654-55. To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003). Mere conclusory allegations of discrimination are insufficient to state a claim. *Spaulding v. Dixon*, No. 90-7315, 1990 U.S. App. LEXIS 15560, *2, 1990 WL 126136, at *1 (4th Cir. Sept. 4, 1990); *Chapman v. Reynolds*, 378 F. Supp. 1137, 1139 (W.D. Va. 1974).

Although Gordon alleges that other inmates' dental needs were treated more quickly than his, he has not demonstrated that those inmates' dental needs were of the same low level of severity and urgency as his need for a filling. Accordingly, Gordon's allegations do not demonstrate that the defendants treated him differently from other inmates with whom he was similarly situated or that any unequal treatment was the result of intentional or purposeful discrimination. Therefore, Gordon has not stated a constitutional claim and I will grant defendants' motions as to this claim.

**ENTER**: This 16th day of September, 2014.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE